# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CYNTHIA GRESHAM-WALLS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 12 C 1344 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| DOROTHY BROWN, Clerk of the Circuit ) | |
| Court of Cook County, in her Official Capacity, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Cynthia Gresham-Walls, a former employee of Defendant Dorothy Brown, Clerk of the Circuit Court of Cook County ("the Clerk"), brings this suit alleging discrimination under the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and the Family and Medical Leave Act ("FMLA"). Gresham-Walls alleges that she has conversion disorder, generalized anxiety disorder, and depression that caused her to take FMLA leave and to request a lessening of her job duties. The Clerk asks for summary judgment all Gresham-Walls' claims. Because material issues of fact exist as to whether Gresham-Walls' stated disability and FMLA-approved absences motivated her firing, and whether Gresham-Walls requested a reasonable accommodation, the Clerk's motion [90] is denied.

## BACKGROUND[1]

The Clerk employed Gresham-Walls for nearly seventeen years, from April 16, 1990 to March 31, 1995 and from August 31, 1998 to April 2, 2010, as an Administrative Clerk and then as an Administrative Assistant III. Gresham-Walls began in the Civil Division, where she had a

---

[1] The facts in this section are derived from the Parties' Amended Joint Statement of Undisputed Material Facts [103] and this Court's May 29, 2014 ruling on whether certain facts were properly disputed [86]. They are taken in the light most favorable to Gresham-Walls, the non-movant.

series of supervisors, and received one write-up in February 2003 for unreliability and poor performance. In June 2004, Gresham-Walls received a lateral transfer to the Chancery Division, where she worked for four years.

While in the Chancery Division, on August 18, 2008, Gresham-Walls experienced an episode during which she lost her ability to speak ("the August 2008 episode"). Gresham-Walls' supervisor, Catherine Sink, observed this episode and notified Gail Lutz in the Human Resources Department, who responded to the scene. The cause of this episode is disputed. Gresham-Walls' expert witness characterizes it as a conversion disorder episode. That witness describes Gresham-Walls as having "a primary diagnosis of Conversion Disorder with Speech Symptoms, Persistent, without Psychological Stressor, a secondary diagnosis of 300.02 Generalized Anxiety Disorder, and a tertiary diagnosis of 309.28 Adjustment Disorder of Mixed Anxiety and Depressed Mood." Doc. 103 ¶ 73. Gresham-Walls states she began experiencing symptoms of conversion disorder in 2005. She describes these symptoms as her body "shut[ing] down" and being unable to speak in response to stress. *Id.* ¶ 74. Gresham-Walls reports that on at least two occasions she has lost the ability to write during such episodes. She also states that her depression and anxiety have caused her to "experience[] feelings of worry, irritability, sadness, feelings of worthlessness and being overwhelmed, and inability to speak." *Id.* ¶ 75. Gresham-Walls' supervisor, Sink, was told during the August 2008 episode that Gresham-Walls was experiencing a panic attack and could not speak. Sink expressed the opinion at the time that this was not a panic attack, but rather Gresham-Walls' reaction to correction and an attempt to evade job responsibilities.

After the episode, Sink submitted two forms—a referral for fitness of duty form, in which she described observing Gresham-Walls in an "almost . . . catatonic state" and a memorandum to

Lutz. *Id.* ¶ 14. The memorandum detailed Sink's perceptions of problems with Gresham-Walls' performance, including: an alleged shouting match with another employee in view of the public; Sink's statements to Gresham-Walls shortly before the August 2008 episode that the shouting was conduct unbecoming a manager and that if it occurred again she would be written up; Gresham-Walls' disregard for comp time and phone-answering policies; and an incident where Gresham-Walls became angry and walked out of the office. Gresham-Walls was not disciplined as a result of Sink's memorandum. Gresham-Walls did meet with Sink, Lutz, Labor Relations Chief Hollis Healy, and Chief of Staff Eduna Wilks directly after the August 2008 episode to discuss creating a written performance plan and retraining Gresham-Walls on timekeeping and how to respond when confronted by management. However, no performance plan was prepared and Gresham-Walls did not receive further training.

The Clerk granted Gresham-Walls FMLA block leave from August 18, 2008 to October 15, 2008, after which Gresham-Walls was required to report for a fitness for duty and medical examination. On October 15, 2008, Gresham-Walls returned to work at the Clerk's Office. She met with Lutz and Healy. During this meeting, Lutz discussed Gresham-Walls' medical condition and shared breathing techniques with her to control stress. Lutz asked Gresham-Walls to check-in with Healy regarding how many times during the day she had to stop work to take a break. That same day Gresham-Walls was re-assigned to the Traffic Division, where her new supervisor was Beena Patel.

Gresham-Walls' job duties in the Traffic Division included preparing statistical reports, answering telephones, serving as backup timekeeper, and ordering supplies. After about six months, she was assigned the additional task of responding to prisoner correspondence and judicial mail.

During her time in the Traffic Division, Gresham-Walls states that on at least one occasion she worked while unable to speak. On October 15, 2009, Gresham-Walls reports having another conversion disorder episode at work and losing her ability to speak ("the October 2009 episode"). Gresham-Walls applied for and the Clerk's Office approved intermittent FMLA for the time period from November 17, 2009 to May 15, 2010. The leave was requested so that Gresham-Walls could attend weekly psychotherapy to treat her medical conditions and for absences resulting from extreme episodes of lost speech.

In February 2010, Gresham-Walls requested that her prison correspondence and judicial mail job duties be reassigned to another employee. Gresham-Walls states that she told Patel, her supervisor, that she was requesting this reassignment of duties because of her disability. Patel disputes that Gresham-Walls mentioned her disability during the request. Those duties had not been reassigned by the time of Gresham-Walls' termination.

Gresham-Walls took approved FMLA leave from February 25, 2010 through March 10, 2010. While Gresham-Walls was out, Patel contacted Lutz about Gresham-Walls' attendance problems. Patel memorialized her concerns in a memorandum ("the Patel memorandum"). Patel's concerns included that Gresham-Walls' frequent absences affected the daily operations of the Traffic Division. She described the work backlog those absences created and that the backlog negatively affected Gresham-Walls' productivity. Patel requested Lutz find a different position for Gresham-Walls because the position as her administrative assistant and backup timekeeper was very important to the running of the division. Patel stated she needed her assistant to take calls and messages and to locate her in an emergency because Patel was frequently away from her desk. She complained about her inability to assign time-sensitive projects to Gresham-Walls because she feared missed deadlines due to unplanned absences. She

also noted Gresham-Walls' excessive socializing despite frequent requests not to do so when there was a work backlog.

In her deposition, Patel testified that she did not distinguish between FMLA-covered absences and other absences when writing the memorandum, stating that she "just described what [she] was experiencing." Doc. 103 ¶ 33. At the time, Patel thought Gresham-Walls had too many absences and that it was a problem. Patel considered Gresham-Walls' absences in evaluating her performance, because when Gresham-Walls was not at work, the work was not being done. Patel subsequently reported to the Illinois Department of Human Rights that Gresham-Walls was a good employee when she was at work.

Patel signed Gresham-Walls' FMLA forms and received return-to-work forms for Gresham-Walls stating that she was returning from a medical FMLA leave. Patel never told Gresham-Walls she could not use her FMLA time, but did sometimes ask her to complete a task before leaving for an FMLA absence. Patel never told Gresham-Walls to fill out an ADA reasonable accommodation form or referred Gresham-Walls to the human resources or labor relations department or asked for medical documentation for the absences. Gresham-Walls never filled out an ADA accommodation request form.

Gresham-Walls testified that she was occasionally late to work due to having to drop her children at school. Gresham-Walls also believed that she was treated differently from other managers because she could do her job and therefore was given more duties than other managers. Her supervisor Patel remembers Gresham-Walls stating that she was late because her family was her priority and she had to take her daughters to school.

The Clerk's Office terminated Gresham-Walls on April 2, 2010 by informing Gresham-Walls that her services were no longer required. Gresham-Walls was an at-will employee and

had signed at-will affirmations in May 2005 and March 2010. At the time of her termination, Gresham-Walls had approximately 328 hours and 20 minutes of remaining FMLA time.

Gail Lutz and Dorothy Brown were responsible for termination decisions. Lutz reviewed Gresham-Walls' personnel file, which included the Patel memorandum, in deciding whether to terminate her. Lutz does not directly supervise employees and therefore learns of employee experiences from the department chiefs. Lutz has testified that she did not know Gresham-Walls was on FMLA leave and did not consider her absences in making the termination determination. Healy also testified that Gresham-Walls was not terminated based on her attendance. Gresham-Walls had zero Attendance/Disciplinary Policy attendance points against her when she was terminated. Lutz stated that Gresham-Walls' supervisors and department chiefs had complained about Gresham-Walls' failure to meet the performance expectations for her job and that the Clerk's Office transferred Gresham-Walls on several occasions to try to find her a good fit, particularly a less stressful work environment and a "more pliable" manager. *Id.* ¶ 70.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To determine whether a genuine issue of fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed. R. Civ. P. 56 & advisory committee's notes. The party seeking summary judgment bears the initial burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine issue

for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598-99 (7th Cir. 2000). Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

## ANALYSIS

I. **FMLA Claims**

   A. **Retaliation**

First the Clerk argues that Gresham-Walls did not adequately plead a retaliation claim and therefore cannot assert this claim on summary judgment. Gresham-Walls' Second Amended Complaint ("Complaint") explicitly brings her FMLA claim under 29 U.S.C. § 2615(a), which prohibits an employer from "interfere[ing] with" FMLA rights, and 29 C.F.R. § 825.220(c), which defines FMLA interference as "prohibit[ing] an employer from discriminating or retaliating against an employee" for exercising FMLA rights. Doc. 23 ¶¶ 78–79. The Clerk has had adequate notice of Gresham-Walls' retaliation by termination claim and Gresham-Walls may continue with this claim at this time. *See Johnson v. Chrysler Group, LLC*, No. 1:12-cv-1582-WTL-DML, 2014 WL 3509984, at *6 (S.D. Ind. July 15, 2014) (rejecting similar argument, explaining "it is well-established that 'plaintiffs in federal court are not required to plead with precision legal theories or detailed facts'" (quoting *Benuzzi v. Bd. of Educ. of City of Chicago*, 647 F.3d 652, 664 (7th Cir. 2011))).

Under the FMLA, Congress has made it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act]"

7

and "for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the Act. 29 U.S.C. § 2615(a). An FMLA claim requires evidence of participation in an FMLA-protected activity. *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 828 (7th Cir. 2012).

To prove an FMLA retaliation claim, a plaintiff must show her employer's "discriminatory or retaliatory intent, which can be established directly or indirectly." *Id*. In response to the motion for summary judgment, Gresham-Walls states that she is proceeding on the retaliation claim via direct proof. The direct method of proof requires the plaintiff submit direct or circumstantial evidence that her employer acted against her for taking or requesting FMLA leave. *Id*. To prevail, Gresham-Walls must show she participated in a statutorily protected activity, the Clerk took a materially adverse employment action against her, and the two events were causally connected. *See Burnett v. LFW Inc.*, 472 F.3d 471, 481 (7th Cir. 2006). "If the plaintiff's evidence is thereafter contradicted: the case must be tried unless the defendant presents unrebutted evidence that he would have taken the adverse employment action against the plaintiff even if he had had no retaliatory motive[.]" *Id.* (citation omitted) (quotation marks omitted).

There is no dispute that Gresham-Walls applied for, was granted, and took FMLA block and intermittent leave. There is also no dispute that Gresham-Walls was terminated on April 2, 2010. In a direct proof retaliation case, causation may be shown either by direct evidence—i.e. an employer admission—or, more likely, "a convincing mosaic of circumstantial evidence" from which discrimination may be inferred. *See Pagel v. TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012). Such circumstantial evidence may include "suspicious timing, ambiguous statements from which

8

a retaliatory intent can be drawn, evidence of similar employees being treated differently, or evidence that the employer offered a pretextual reason for the termination." *Id.*

As an initial matter, the parties dispute the proper causation standard for an FMLA retaliation case. The Clerk argues the standard is "but for cause," citing *Univ. of Texas Sw. Med. Ctr. v. Nassar*, -- U.S. ---, 133 S. Ct. 2517, 2533. 186 L. Ed. 2d 503 (2013), while Gresham-Walls contends *Nassar* applies only to Title VII cases and neither this Circuit nor any other has extended this higher causation standard to FMLA, therefore the established "motivating factor" test applies, *see Goelzer v. Sheboygan County, Wis.*, 604 F.3d 987, 995 (7th Cir. 2010). The Clerk did not address this issue in reply. The Seventh Circuit has recently declined to decide whether *Nassar* raises the causation standard for FMLA cases. *See Malin v. Hospira, Inc.*, 762 F.3d 552, 562 n.3 (7th Cir. 2014) ("Our circuit has not addressed, and the parties have not briefed, whether but-for causation should apply to FMLA retaliation claims in light of *Gross* and *Nassar*. We need not resolve the question here, however, because [the plaintiff] can avoid summary judgment on both claims even if but-for causation applies[.]"); *see also Nigh v. Sch. Dist. of Mellen*, --- F. Supp. 3d ----, 2014 WL 4794521, at *18–19 (W.D. Wis. Sept. 25, 2014) (comprehensive review of FMLA retaliation cases after *Nassar*).

As in *Malin*, we need not decide whether the "but for" or "motivating factor" test applies because Gresham-Walls has provided facts from which a jury could find that her FMLA leave was the "but for" cause of her termination. Gresham-Walls was terminated on April 2, 2010, three weeks after having returned from FMLA leave—suspicious timing is one element of the "convincing mosaic of circumstantial evidence" courts often look to in retaliation cases. *See Malin*, 762 F.3d at 563–64. Further, although Gresham-Walls had zero attendance points under the Attendance Policy, her supervisor, Ms. Patel, contacted the head of Human Resources, Ms.

9

Lutz, about Gresham-Walls' absences during the FMLA leave. Patel drafted a memorandum detailing her concerns and requesting that Gresham-Walls be transferred to another division because her frequent absences affected her division's work. Patel stated she needed an administrative assistant and backup timekeeper who could take calls and messages and locate her in an emergency because Patel was frequently away from her desk. She was concerned that she could not assign time-sensitive projects to Gresham-Walls because of Gresham-Walls' frequent unplanned absences. The memorandum's focus was Gresham-Walls' frequent absences and the work backlog those absences generated. Patel signed Gresham-Walls' FMLA forms and received Gresham-Walls' return-to-work forms, yet testified in her deposition that she did not differentiate between FMLA-approved and other absences when writing the memorandum. Patel admitted she considered Gresham-Walls' absences when evaluating her performance. Gresham-Walls has presented sufficient evidence for a jury to find that the FMLA absences motivated Patel's efforts to have Gresham-Walls removed from her division.

The Patel memorandum was included in Gresham-Walls' personnel file, which was reviewed by Lutz when the decision was made to terminate Gresham-Walls. Lutz testified at her deposition that she did not know of Gresham-Walls' FMLA status when she terminated her. However, if Gresham-Walls can establish that Patel, with discriminatory motive, wrote her memorandum intending to cause Lutz to terminate Gresham-Walls and the Patel memorandum was the proximate cause of the termination decision, Patel's motive may be imputed to Lutz under the "cat's paw" theory. *See Carter v. Chicago State Univ.*, No. 10 C 321, 2013 WL 3975009, at *11 (N.D. Ill. Aug. 1, 2013) (citing *Schandelmeier-Bartels v. Chicago Park Dist.*, 634 F.3d 372, 379 (7th Cir. 2011)). However, these fact-intensive questions must wait for trial.

10

Although the Clerk provides evidence of problems with Gresham-Walls' attitude and work performance, a jury could find that she was terminated because of her FMLA-approved absences. *See Goelzer*, 604 F.3d at 996 (reversing grant of summary judgment, finding factual question whether FMLA absences motivated termination). Therefore, summary judgment on Gresham-Walls' FMLA retaliation claim must be denied.

B. **Interference**

The Clerk also seeks summary judgment on Gresham-Walls' FMLA interference claim. An FMLA interference claim requires a plaintiff to show that she was eligible for FMLA leave, the defendant employer was covered by the FMLA, the plaintiff was entitled to FMLA leave, provided sufficient notice of her intent to take FMLA leave, and her employer denied her the FMLA benefits to which she was entitled. *Goelzer*, 604 F.3d at 993. Unlike a retaliation claim, interference does not require proof of discriminatory intent. *See Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005).

That the Clerk's Office approved all Gresham-Walls' FMLA leave requests and Gresham-Walls was never denied FMLA leave does not necessarily defeat an interference claim based on a termination. *See, e.g.*, *Vanstory-Frazier v. CHHS Hosp. Co., LLC*, No. 08-3910, 2010 WL 22770, at *10 (E.D. Pa. Jan. 4, 2010) (employee who returned to work for two weeks could sustain interference claim because termination decision made during leave (relying on *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1288 (10th Cir. 2007))); *Burnett*, 472 F.3d at 478 (employee terminated before FMLA leave could be taken).[2] In support of this theory,

---

[2] Although the Clerk argues we should follow *Plaxico v. County of Cook*, No. 10 C 272, 2011 WL 4837287, at *3 (N.D. Ill. Oct. 12, 2011) to find that because all Gresham-Walls' FMLA requests were granted she has no interference claim, that case is not directly on point. There the court found that speculation as to what might have happened had the employee requested leave was insufficient to support an interference claim. Gresham-Walls' interference claim is based on her termination when she was

11

Gresham-Walls makes three arguments: 1) the Clerk interfered with her FMLA rights by terminating her to prevent her from taking FMLA leave in the future; 2) the Clerk used her FMLA-protected leave as a negative factor in the termination decision; and 3) the Clerk "fail[ed] to reinstate [Gresham-Walls] following her FMLA-protected leave." Doc. 104 at 12.

There is no real dispute as to the elements of Gresham-Walls' interference claim. At the time of her termination, Gresham-Walls had recently returned from FMLA block leave, was approved for intermittent FMLA leave, and had over 328 hours of FMLA time remaining. As discussed above, Gresham-Walls has presented evidence that her absences were detailed by Patel in her memorandum and considered by Patel when evaluating her performance. This memorandum was in the materials reviewed by Lutz in making the termination decision. These facts, read most favorably for Gresham-Walls as the non-movant, could meet her burden to show interference on these three theories.

However, once the employee has met her burden, the employer may then present evidence that it would have discharged the employee even without the leave-taking or leave request. *Kohls v. Beverly Enter. Wis., Inc.*, 259 F.3d 799, 804 (7th Cir. 2001). The Clerk has presented sufficient evidence to create a fact issue as to whether Gresham-Walls, an at-will employee, would have been terminated regardless of her FMLA leave. Gresham-Walls had some negative employment history and her supervisors complained of performance issues. Further, Ms. Lutz, the Director of HR, has testified that she did not know of Gresham-Walls' FMLA status when she made the decision to terminate her and the official reason given for the termination was that Gresham-Walls' services were no longer needed. The right to reinstatement is not "unlimited": "an employee is not entitled to any right, benefit, or position of employment

---

eligible to take intermittent leave and directly after she returned from approved block leave. No speculation is required.

other than any right, benefit, or position to which the employee would have been entitled had the employee not taken the leave." *See Daugherty v. Wabash Ctr., Inc.*, 577 F.3d 747, 750 (7th Cir. 2009) (citation omitted) (internal quotation marks omitted). The jury may ultimately credit the Clerk's explanation for the termination rather than Gresham-Walls' FMLA theory. However, this fact question cannot be determined at this stage. *See Goelzer*, 604 F.3d at 995 (reversing grant of summary judgment on interference claim). Summary judgment on Gresham-Walls' FMLA interference claim is denied.

## II.     Rehabilitation Act Claims

### A.     Termination

The Rehabilitation Act protects an otherwise qualified individual with a disability from exclusion from participation in, denial of the benefits of, or discrimination in any program or activity receiving federal financial assistance "solely by reason of her or his disability." 29 U.S.C. § 794(a). The Rehabilitation Act and Title I of the ADA have similar elements, although the Rehabilitation Act requires a stronger causal link between the claimed disability and the alleged adverse employment action. *See Brumfield v. City of Chicago*, 735 F.3d 619, 630 (7th Cir. 2013). The Rehabilitation Act borrows its definition of disability from the ADA and the courts use ADA precedent to analyze Rehabilitation Act claims. *See Garg v. Potter*, 521 F.3d 731, 736 (7th Cir. 2008). In order to prevail on her Rehabilitation Act claim, Gresham-Walls must show she suffers from a qualifying disability, is otherwise qualified to perform the essential functions of her job with or without a reasonable accommodation, and suffered an adverse employment action solely because of her disability. *See Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005) (elements of claim); *Brumfield*, 735 F.3d at 630 ("solely because of" causation standard).

The Clerk moves for summary judgment on Gresham-Walls' Rehabilitation Act termination claim on the basis that Gresham-Walls has not established that she has a disability within the meaning of Section 504 of the Rehabilitation Act or that she was terminated because of her disability rather than for performance problems. Gresham-Walls asserts that she has a qualifying disability, she is qualified for the position of Administrative Assistant, and she has raised a genuine issue of fact on causation.

First, the Clerk argues Gresham-Walls cannot establish that she has a qualifying disability. Gresham-Walls has the burden to establish that she is disabled. *See Bukta v. J.C. Penney Co., Inc.*, 359 F. Supp. 2d 649, 663 (N.D. Ohio 2004), *abrogated on other grounds Carrasco v. NOAMTC Inc.*, 124 F. App'x 297, 304 (6th Cir. 2004). Gresham-Walls presents evidence that she has a primary diagnosis of Conversion Disorder with Speech Symptoms, Persistent, without Psychological Stressor, a secondary diagnosis of 300.02 Generalized Anxiety Disorder, and a tertiary diagnosis of 309.28 Adjustment Disorder of Mixed Anxiety and Depressed Mood. Doc. 103 ¶ 73. The Clerk has not challenged this diagnosis with any expert testimony of its own.

To have a qualifying disability under the Rehabilitation Act, however, a plaintiff must show a "'physical or mental impairment that substantially limits a major life activity, a record of such impairment, or [is] regarded as having such impairment.'" *See Garg*, 521 F.3d at 736 (quoting 42 U.S.C. § 12102(2)). Conversion disorder, generalized anxiety disorder, and depression may be qualifying disabilities under the ADA and Rehabilitation Act. *See Bukta*, 359 F. Supp. 2d at 663–64 (finding conversion disorder was an impairment for purposes of the ADA); *Henricks v. Bd. of Educ. of the City of Chicago*, No. 04 C. 8284, 2008 WL 4126733, at *7 (N.D. Ill. Sept. 4, 2008) (parties agreed conversion disorder qualifies as a disability under the

14

ADA); *Cohen v. Ameritech Corp.*, No. 92 C 7378, 2003 WL 23312801, at *4 (N.D. Ill. Dec. 23, 2003) (anxiety disorder and depression are mental impairments under the ADA).

Gresham-Walls must prove her disability or disabilities substantially limit a major life activity. *See Garg*, 521 F.3d at 736. Gresham-Walls presents evidence that conversion disorder causes her to lose the ability to speak when under stress. Speaking and communicating are "major life activities" that may be sufficiently affected by a disability to qualify an individual for protection under the ADA and Rehabilitation Act. 42 U.S.C. § 12102(2)(A); *see Stalter v. Bd. of Coop. Educ. Serv. of Rockland County*, 235 F. Supp. 2d 323, 329–30 (S.D.N.Y. 2002) (limitations on speech considered limitation in performing major life activity); *c.f. Cho v. Walgreen Co.*, No. 97 C 3777, 1999 WL 498594, at *3 (N.D. Ill. July 6, 1999) (cerebral palsy that mildly interfered with ability to speak not a qualifying disability). However, neither side presents sufficient evidence from which the Court could determine whether the length and duration of Gresham-Walls' loss of speech qualifies as "substantially limiting" under the ADA. Therefore, although Gresham-Walls has presented sufficient evidence of a disability to survive summary judgment, the Court will not find at this time that she is disabled for the purposes of the ADA and Rehabilitation Act.

And, although the Clerk does not develop this argument, it also asserts that Gresham-Walls is not otherwise qualified to perform the essential functions of the Administrative Assistant position. Gresham-Walls states that she is "undisputedly qualified" for the position, but this stretches the undisputed facts too far. While Gresham-Walls' supervisor Ms. Patel did express the opinion that Gresham-Walls was a good employee while at work, the record also presents Gresham-Walls' performance in a less favorable light. And neither side makes a clear

argument as to whether speaking is an essential function of her job. Based on the limited arguments before it, the Court will not grant summary judgment for the Clerk on this issue.

Finally, similar to the reasons discussed above regarding the FMLA termination claim, there is a disputed question of fact as to whether Gresham-Walls' disability caused her termination. Whether the Clerk fired Gresham-Walls due to her episodes of inability to speak and disability-related absences rather than her performance problems is a question for the jury. They will have to determine whether Gresham-Walls can show her disability was the termination's sole motivating factor for the purposes of the Rehabilitation Act. Therefore, summary judgment for the Clerk on Gresham-Walls' Rehabilitation Act termination claim is denied.

### B. Failure to Accommodate

The Clerk also moves for summary judgment on Gresham-Walls' Rehabilitation Act failure to accommodate claim, asserting Gresham-Walls never requested any accommodation for her disability and that she cannot meet the other *prima facie* elements of this claim. Because there is a question of fact as to whether Gresham-Walls requested an accommodation for her stated disability or disabilities, summary judgment is denied.

A failure to accommodate claim requires the plaintiff show she is a qualified individual with a disability and that her employer was aware of that disability but failed to reasonably accommodate it. *See Brumfield*, 735 F.3d at 631. As discussed above, Gresham-Walls presents evidence of her disability or disabilities and there is a fact question as to whether she is an individual qualified for the position.

As for whether the Clerk's Office failed to reasonably accommodate Gresham-Walls, it is undisputed that she was never directed to and never submitted an ADA accommodation request

form. The only incident in the record that could be construed as an accommodation request is when Gresham-Walls asked Ms. Patel to reassign the prisoner and judicial correspondence. At the hearing on May 29, 2014, this Court found the following fact to be disputed: "In 2009, Cynthia asked Patel to reallocate her acquired duty of responding to prisoner correspondence and judicial mail, and explained that she needed this assistance because of her disabilities." This fact is disputed because, although Gresham-Walls testified that she told her supervisor that she was requesting this assistance because of her disabilities, as detailed in Defendant's Response to that motion, her supervisor remembers the request, but disputes that Gresham-Walls stated the request was linked to her claimed disability. See Doc. 81 at 7. Therefore there is a question about whether Gresham-Walls ever requested a disability-based accommodation.

Additionally, as the Seventh Circuit has explained, "there must be some causal connection between the major life activity that is limited and the accommodation sought." *See Brumfield*, 735 F.3d at 633 (quoting *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 785 (7th Cir. 2007)). Gresham-Walls testified that, during two conversion episodes, she lost the ability to write. Without more detail, including whether these incidents even occurred in the workplace, the link between her diagnoses and the request to have mail-answering duties reassigned is not clear. "An employer is not obligated to provide an employee the accommodation he requests or prefers, the employer need only provide some reasonable accommodation." *Gile v. United Airlines, Inc.*, 95 F.3d 492, 499 (7th Cir. 1996). So even if Gresham-Walls' request for reassignment of this task was related to her conversion disorder or other diagnoses—which she has not explained—she would not be entitled to this particular requested accommodation, necessarily, if other reasonable accommodations were available. *See id.* (explaining the right to a reassignment to another position is not unlimited). Similarly, requesting that another employee

17

perform the essential functions of one's job is not a reasonable accommodation. *See Majors v. Gen. Elec. Co.*, 714 F.3d 527, 534 (7th Cir. 2013) ("To have another employee perform a position's essential function, and to a certain extent perform the job for the employee, is not a reasonable accommodation."). However, there is some evidence in the record that these mail duties were not necessarily essential functions of her job—for example, Gresham-Walls was assigned this task after six months in her current position. Fact questions preclude summary judgment on Gresham-Walls' Rehabilitation Act failure to accommodate claim.

### III.   ADA Termination Claim

The Clerk's summary judgment opening brief did not include a challenge to Gresham-Walls' surviving ADA claim for termination, therefore Gresham-Walls contends this argument is waived.[3] The Clerk attempts to salvage this claim in its reply brief by stating the *prima facie* ADA and Rehabilitation Act claim elements are the same and therefore its arguments apply equally to both. However, a party may not present new arguments in reply. *See, e.g.*, *Militello v. Cent. States Se. & Sw. Areas Pension Fund*, 360 F.3d 681, 690 n.10 (7th Cir. 2004) (expressly disregarding new arguments raised in reply brief). The Clerk has not properly presented this claim on summary judgment and summary judgment is denied on that basis. In addition, for the reasons discussed above, there are disputed issues of causation that preclude summary judgment on the merits of a termination claim based on disability. For these reasons, summary judgment on the ADA termination claim is denied.

---

[3] Summary judgment against Gresham-Walls on her ADA failure to accommodate claim was entered on August 17, 2012. Doc. 32.

## CONCLUSION

For the foregoing reasons, the Clerk's motion for summary judgment [90] is denied.

Dated: November 25, 2014

SARA L. ELLIS
United States District Judge